UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DANIELLE KENELL WEADD | * | CIVIL ACTION NO. 23-1259 |
| | * | |
| | * | SECTION: "G"(1) |
| VERSUS | * | |
| | * | JUDGE NANNETTE JOLIVETTE BROWN |
| PEARLINA THOMAS, KRISTEN | * | |
| MORALES, AND SUSAN A. HUTSON | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************ | * | |

ORDER AND REASONS

This is an employment discrimination lawsuit. Before the Court are the Motions to Dismiss filed by defendant Sheriff Susan A. Hutson and defendant Kristen Morales. (Rec. Docs. 11, 34). Plaintiff Danielle Kenell Weadd cannot state a claim under federal and state employment discrimination laws against Ms. Morales because she is an individual, not Ms. Weadd's employer. Further, because plaintiff Danielle Kenell Weadd's charge of discrimination before the Equal Employment Opportunity Commission did not raise claims for sex discrimination or hostile work environment, Ms. Weadd has failed to exhaust her administrative remedies as to these claims under both federal and state law. Additionally, her negligence claims are barred by the Louisiana's Workers' Compensation Statute because the alleged negligent actions occurred in the course and scope of Ms. Weadd's employment. She also cannot state a claim for equal protection under the Louisiana Constitution because she does not challenge a discriminatory *law*. Nor can she state a claim for retaliation because she has not plausibly alleged that she engaged in a protected activity. The Motions to Dismiss are GRANTED; Ms. Weadd's claims against Sheriff Hutson and Ms. Morales are hereby dismissed with prejudice. [1]

---

[1] Defendant Pearlina Thomas did not file a motion to dismiss, and all claims against her remain pending at this time.

Background

Ms. Weadd began working as a Human Resources Manager under Orleans Parish Sheriff Marlin Gusman in January 2019. She continued in this position when Sheriff Hutson was elected sheriff, and Ms. Weadd was later promoted to interim Director of Human Resources. Ms. Weadd alleges that she began to experience issues after her promotion. For example, she alleges that Pearlina Thomas, Assistant Sheriff for Governance, informed her that Blake Arcuri had stated that Ms. Weadd was not qualified to serve as Director of Human Resources because she did not have a college degree. However, Ms. Weadd explained that she does have a college degree.

Ms. Thomas also notified Ms. Weadd that Ms. Warner was having an affair with a male employee and implied that Ms. Warner was friends with Ms. Weadd. But Ms. Weadd explained that she only has a working relationship with Ms. Warner and met her when she started employment at the Sheriff's Office.

Ms. Thomas allegedly mentioned that Ms. Weadd should be friends with her and defendant Kristen Morales, Assistant Sheriff, and Ms. Weadd interpreted this as an implication that she was not a team member and must be loyal to Thomas and Morales if she valued her job. Ms. Weadd claims that Ms. Thomas arbitrarily questioned her loyalty to carry out instructions of Ms. Thomas and Sheriff Hutson when it came to recommending the hiring of new applicants and previously employed applicants. She alleges that Ms. Thomas often chose to believe unsubstantiated rumors about her without discussing the accuracy of the rumors with her. She alleges that Ms. Thomas bypassed her and communicated directly with Ms. Weadd's subordinates. And she alleges that Ms. Thomas orally reprimanded her in front of her subordinates. Ms. Weadd claims that Ms. Thomas conspired with Ms. Morales and later Sheriff Hutson to create a hostile work environment with the goal of forcing Ms. Weadd to resign and hiring a male to replace her.

According to the Complaint, Ms. Weadd met with Sheriff Hutson on July 5, 2022, to discuss Ms. Thomas' "unprofessional behavior and why Thomas was creating a hostile and disparate work environment." Thereafter she was summoned to Ms. Thomas' office where Ms. Thomas allegedly stated she was sorry that Ms. Weadd felt "left out" but then continued belittling and demeaning Ms. Weadd and her job performance. On July 7, 2022, Ms. Thomas sent emails to her and Sheriff Hutson allegedly criticizing Ms. Weadd with regard to the application of a former employee for rehire.

Ms. Weadd met with Sheriff Hutson again on July 8, 2022, and allegedly explained that "the hostile and disparate work environment created by defendants Thomas and Morales" was causing her to leave work daily with headaches. She claims that Sheriff Hutson instructed Ms. Weadd to get back to work and not to keep running to her office. Ms. Thomas sent Ms. Weadd an email on the same day allegedly accusing her of not providing a list of open positions, job descriptions, and salaries. Ms. Weadd alleges that Ms. Thomas also notified Sheriff Hutson that Ms. Weadd had failed to follow the Sheriff's directive that she personally interview applicant Greer Conerly and that instead, Ms. Weadd had allowed two HR Generalists to conduct the interview.

Also on the same day, Ms. Weadd received an email from John Williams, co-Chief Legal Officer informing her that he had reviewed her complaint of a hostile work environment and that the Sheriff's Office was retaining a third party to conduct an investigation. On July 12, 2023, Ms. Weadd took leave through August 10, 2022, because of her anxiety and health. She complains that when she returned to work, she was locked out of the computer system.

On August 19, 2022, Ms. Weadd followed up with Mr. Williams about her complaint of a hostile and disparate work environment and asked why she was still denied access to the HR

system and why no one was responding to her emails. Ten days later she again emailed Mr.

Williams, this time along with Ronald Wilson, the attorney retained to investigate her hostile and

disparate work environment complaint. Mr. Wilson informed her on August 31, 2022, that she was

not allowed to have her attorney present at her interview. Ms. Weadd responded that she would

file an EEOC complaint. Her employment was terminated the following day and she was escorted

out of the building by six people. She later received a letter explaining that she had been terminated

for poor job performance. She also learned she had been replaced by Shandon Davis, a black male.

Ms. Weadd filed an EEOC charge and received a right to sue letter on January 3, 2023. She

filed this lawsuit against the Sheriff, Ms. Thomas, and Ms. Morales on April 14, 2023. She alleges

that she was terminated because she was a female, because she filed a hostile and disparate

workplace complaint and asked for an investigation, and because she told Mr. Wilson that she was

filing an EEOC complaint after being informed she could not have her attorney present at her

interview. She asserts an equal protection claim under Article I, Section 3 of the Louisiana

Constitution, she alleges unlawful employment discrimination on the basis of her race, color, or

sex in violation of federal and Louisiana employment discrimination law and Louisiana's

negligence code articles, she alleges that defendants created a continuing and hostile and disparate

work environment and constructively terminated her in violation of Title VII, and she alleges that

defendants failed to properly supervise the Sheriff's Office management. [2]

Sheriff Hutson and Ms. Morales have filed motions to dismiss. Ms. Thomas has filed an

answer, although she raises Ms. Weadd's failure to state a claim as an affirmative defense. Ms.

---

[2] In her opposition memorandum, but not in her Complaint, Ms. Weadd argues that Sheriff Hutson also ignored her own policies and procedures in terminating and replacing her. She cites various Orleans Parish Sheriff's Office policies and rules. However, these do not bear on the claims alleged in the Complaint and are not addressed here.

Weadd has filed a memorandum in opposition to Sheriff Hutson's motion. She did not separately respond to Ms. Morales' motion.

Law and Analysis

1. *Standard for a Motion to Dismiss*

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks and ellipsis omitted). Accordingly, Rule 12(b)(6) allows a defendant to move for expeditious dismissal when a plaintiff fails to state a claim upon which relief can be granted. In ruling on a 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). Further, "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level." Id. (citation, footnote, and quotation marks omitted). On that point, the United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

2. *Individual Liability of Ms. Morales under Title VII and LEDL*

"[R]elief under Title VII is only available against an employer, not an individual supervisor or fellow employee." Umoren v. Plano Indep. Sch. Dist., 457 F. App'x 422, 425 (5th Cir. 2012) (quoting Foley v. Univ. of Houston Sys., 355 F.3d 333, 340 (5th Cir. 2003)). Nor is an individual typically considered an "employer" under the Louisiana Employment Discrimination Law ("LEDL"), which defines employer as  one "receiving services from an employee and, in return, giving compensation of any kind to an employee." Farmer v. Mouton, No. CV 16-16459, 2017 WL 1837812, at *9 (E.D. La. May 8, 2017) (quoting La Rev. Stat. §23:302(2)).

Ms. Morales argues that Ms. Weadd cannot state a claim against her under Title VII or the LEDL because she was not Ms. Weadd's employer. Ms. Weadd did not oppose Ms. Morales' Motion to Dismiss. Regardless, as a matter of law the Court finds that Ms. Weadd cannot state a claim for individual liability of Ms. Morales under Title VII or the LEDL, and this claim must be dismissed.

3. *Failure to Exhaust Administrative Remedies as to Sex Discrimination and Hostile Work Environment Claims*

"It is well-settled that courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies." Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex., 40 F.3d 698, 711 (5th Cir. 1994). Thus, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A. 00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). In light of the remedial purposes underlying Title VII, courts "construe employment discrimination charges with the 'utmost liberality,'

bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." Price v. Sw. Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982).

A claim alleging one theory of discrimination must be dismissed where the EEOC charge only alleged a different theory of discrimination. Thomas v. Texas Dep't of Crim. Just., 220 F.3d 389, 395 (5th Cir. 2000) (reversing the district court's ruling allow plaintiff to assert a race discrimination claim when the EEOC charge had only alleged a gender discrimination claim). For example, where an employee's EEOC filings only mentioned age and national origin, the Fifth Circuit found that the district court properly dismissed the employee's racial and gender discrimination claims because they could not have been expected to grow out of the EEOC filings. Kebiro v. Walmart, 193 F. App'x 365, 367 (5th Cir. 2006) (unpublished); see Parker v. Benteler Steel Tube Mfg. Corp., 815 F. App'x 760, 762–63 (5th Cir. 2020) (unpublished). Similarly, where an employee's EEOC charge alleged discrimination on the basis of race and national origin and failed to mention any discrete sexually discriminatory acts or any pattern of discriminatory acts the court found that she failed to exhaust her administrative remedies as to the hostile work environment, retaliation, and sex discrimination claims asserted in her lawsuit. Cargo v. Kansas City S., No. CIV.A. 05-2010, 2009 WL 3010824, at *4 (W.D. La. Sept. 16, 2009).

In contrast, the Fifth Circuit in Gamble v. Birmingham Southern Railroad Co. found that the black switchmen's claims that they had not been allowed to promote to the position of supervisor should have been considered by the district court, even though the EEOC charge only mentioned the claim that they had not been allowed to promote to conductor because of race. 514 F.2d 678, 687-89 (5th Cir. 1975). The court of appeals held that because the evidence showed that all supervisors were chosen from the conductor roster and no black person had reached the supervisory level, the EEOC charge that the employees were not allowed to promote to conductor

based on race implicitly included the complaint that they were not allowed to promote to supervisor. Id. at 689.

Sheriff Hutson[3] argues that Ms. Weadd's sex discrimination and hostile work environment claims fail because she did not exhaust her administrative remedies as to these claims. The Sheriff submits that Ms. Weadd did not specify any basis for such claims, nor did she assert any facts identifying any discriminatory conduct that could have put the Sheriff on notice. She argues that Ms. Weadd's sex discrimination and hostile work environment claims could not have been expected to grow out of her EEOC filings.

In opposition, Ms. Weadd cites the Gamble case and argues that the scope of an EEOC complaint should not be strictly interpreted. She argues that her EEOC charge should be liberally construed.

Here, Ms. Weadd's EEOC charge[4] only mentions "retaliation" in the section titled "Discrimination Based On." Further, the particulars of her charge only describe retaliation. She alleges that she submitted a hostile work environment complaint to Sheriff Hutson verbally and in writing. But she describes only "harassment I received from Pearlina Thomas," and does not indicate that she was experiencing harassment based on a category protected by Title VII or the LEDL. Ms. Weadd further alleges that she told the attorney investigating her complaint that she would move forward with her EEOC charge if she was not allowed to attend the interview with her attorney. She alleges she was discharged the next day. She alleges that although her discharge letter states she was discharged for poor job performance, she has never been disciplined.

_____

[3] Ms. Morales raises the same arguments, but the Court has already found that all Title VII and LEDL claims against Ms. Morales must be dismissed.

[4] The Court finds it appropriate to consider Ms. Weadd's EEOC charge at the motion to dismiss stage because it is referred to in her complaint and because it is central to her claims. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000); Carter v. Target Corp., 541 F. App'x 413, 417 (5th Cir. 2013) (unpublished).

The Court finds that Ms. Weadd's EEOC charge does not even suggest that she was treated differently because of her sex. A sex discrimination charge could not be expected to grow out of the allegations in her EEOC filing.  This case is like <u>Thomas</u>, <u>Kebiro</u>, and <u>Parker</u>, where the plaintiff later sought to assert a different Title VII claim than that raised in the EEOC charge. The Court finds that Ms. Weadd has failed to exhaust her administrative remedies as to any claim of sex discrimination against Sheriff Hutson. This claim must be dismissed.

As to her hostile work environment claim, Ms. Weadd's EEOC charge references merely a "hostile work environment" and "harassment" by Ms. Thomas. Critically, she does not allege that the hostile work environment and harassment were because of her race or sex. She does not allege any facts to suggest or support finding that she experienced harassment based on a protected characteristic. The Court finds that a legally cognizable hostile work environment claim could not be expected to grow out of the retaliation claim Ms. Weadd asserted in her EEOC Charge. The Court finds that she has failed to exhaust her administrative remedies as to any hostile work environment claim. This claim must be dismissed.

*4.  Protected Activity Required for a Retaliation Claim*

Under Title VII,[5] it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). "Protected activity can consist of either: (1) 'oppos[ing] any practice made an unlawful employment practice by this subchapter' or (2) 'ma[king] a charge, testif[ying], assist [ing], or participat[ing] in any manner in

---

[5] Because "Louisiana's  anti-discrimination statute, La. Rev. Stat. Ann. § 23:301 et seq., is 'substantively similar' to Title VII [] and Louisiana courts routinely look to the federal jurisprudence for guidance," the court considers both Weadd's Title VII and LEDL retaliation claim under the same standard. <u>McCoy v. City of Shreveport</u>, 492 F.3d 551, 556 n. 4 (5th Cir. 2007).

an investigation, proceeding, or hearing under this subchapter.'" E.E.O.C. v. Rite Way Serv., Inc.,

819 F.3d 235, 239 (5th Cir. 2016) (quoting 42 U.S.C. §2000e-3(a)) (alteration in original). The

Fifth Circuit has "consistently held that a vague complaint, without any reference to an unlawful

employment practice under Title VII, does not constitute protected activity." Davis v. Dallas Indep.

Sch. Dist., 448 F. App'x 485, 493 (5th Cir. 2011). For example, the Fifth Circuit found that plaintiff

had not engaged in a protected activity when she mentioned to the office manager that her

supervisor had asked her to go out for a drink on two occasions but there was no evidence "she

protested or objected that these invitations were sexual harassment or otherwise unwelcomed."

Marquez v. Voicestream Wireless Corp., 115 F. App'x 699, 703 (5th Cir. Nov. 24, 2004). The

court of appeals concluded there was no evidence that the plaintiff had reported unlawful activity.

Id.; see Nigro v. St. Tammany Par. Hosp., 377 F. Supp. 2d 595, 601 (E.D. La. 2005) (finding that

plaintiff's complaints that a physician's comments offended him and that he did not want to listen

to the comments anymore did not qualify as protected activity because the complaints did not

concern sexual harassment).

Sheriff Hutson[6] argues that Ms. Weadd's allegations regarding her internal complaints to

Sheriff Hutson fail to state that she complained about discrimination or harassment based on any

protected characteristic. She alleges merely that she met with the Sheriff to discuss Thomas'

unprofessional behavior and the hostile and disparate work environment Thomas and Morales

created. Further, the Sheriff submits that, as argued above, Ms. Weadd's EEOC charge does not

allege that the hostile work environment she complained of was based on a protected

characteristic.[7]

---

[6] Ms. Morales raises the same arguments, but the Court has already found that all Title VII and LEDL claims against Ms. Morales must be dismissed.

[7] Defendants also attach Ms. Weadd's written complaint to the Sheriff and argue that it does not mention any protected characteristic. However, the Court will not go beyond the pleadings and consider this exhibit.

In her opposition memorandum, Ms. Weadd does not appear to take the position that her internal complaints to Sheriff Hutson qualify as protected activity. She does not explicitly address the Sheriff's argument on this point at all. Instead, she appears to argue that she was improperly terminated after threatening to file an EEOC complaint. The Sheriff does not address this argument in reply.

The Court finds that Ms. Weadd has failed to allege that she engaged in a protected activity. She alleges that she met with Sheriff Hutson on July 5, 2022, to discuss Ms. Thomas' unprofessional behavior and why Ms. Thomas was creating a hostile and disparate work environment. She alleges that on July 8, 2022, she met with Sheriff Hutson and explained the hostile and disparate work environment created by Ms. Morales and Ms. Thomas in July 2022. These vague complaints do not invoke a protected characteristic (e.g., her race or sex) as the basis for the alleged hostile and disparate work environment. They do not identify or report any unlawful employment practices.

Ms. Weadd also alleges that she informed Mr. Wilson—the attorney retained by the Sheriff to investigate Ms. Weadd's hostile work environment complaint—that she would file an EEOC charge after he refused to allow her to bring her attorney to the interview. Importantly, though, her threat to file an EEOC charge was empty because it was not connected to any allegedly unlawful activity. Ms. Weadd's own allegations show that prior to her termination, she never complained of harassment or disparate treatment based on a protected characteristic and never specified what type of charge she intended to file with the EEOC. Even her EEOC Charge fails to allege any discrimination or harassment based on a protected characteristic. Her threat to file an EEOC charge was connected to her vague and generic internal complaint regarding alleged unprofessional behavior and a hostile work environment created by Ms. Thomas and Ms. Morales without any

reference to an unlawful employment practice. There is simply no way to construe her internal complaints and the bare threat of an EEOC charge as protected activity that could result in actionable retaliation.[8]

### 5. *Preemption of Negligence Claim*

Louisiana's Workers' Compensation law "provides the exclusive remedy for any claim of negligence against an employer." Lefkowitz v. Administrators of Tulane Educ. Fund, No. CV 21-1578, 2022 WL 376148, at *8 (E.D. La. Feb. 8, 2022); see La. Stat. Ann. § 23:1032(A); Bertaut v. Folger Coffee Co., No. CIVA 06-2437 GTP, 2006 WL 2513175, at *3 (E.D. La. Aug. 29, 2006) ("Because the plaintiff specifically claims her actions arise in the "course of employment," worker's compensation applies and is the exclusive remedy for any claims of negligent infliction of emotional distress, failure to train, and failure to supervise.").

Ms. Weadd purports to allege claims under Louisiana Civil Code articles 2315, 2316, 2317, and 2320. These articles concern general negligence and vicarious liability. Sheriff Hutson and Ms. Morales argue that these claims are preempted by the Louisiana's Workers' Compensation law. Ms. Weadd does not dispute this argument in her opposition memorandum. The Court finds that Ms. Weadd's negligence claims under articles 2315, 2316, 2317, and 2320 are preempted by Louisiana's Workers' Compensation law and must be dismissed.

---

[8] Some courts have found that expressing a good faith intention to file an EEOC charge can be a protected activity. E.g., Traylor v. S. Components, Inc., No. 18-CV-0775, 2019 WL 3526358, at *11 (W.D. La. Aug. 1, 2019). In Traylor, the employee threatened to file an EEOC charge because he noticed he had been removed from a position he was training for and that a white employee was given the task. Id. Acknowledging that this might not ultimately violate Title VII, the court found that threatening to file an EEOC charge under those circumstances amounted to a protected activity. Id. Here, in contrast, Ms. Weadd never complained of potentially actionable discrimination or harassment, nor has she alleged any facts that could possibly support an employment discrimination claim. There is no basis to plausibly conclude that Ms. Weadd had a good faith basis to threaten an EEOC charge.

6. *Article I, Section 3 of the Louisiana Constitution*

Article I, Section 3 of the Louisiana Constitution provides that:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations.

La. Const. Ann. art. I, § 3. This clause "is based upon the guarantee that state laws generally 'affect alike all persons and interests similarly situated." State v. Granger, 2007-2285 (La. 5/21/08), 982 So. 2d 779, 788 (quoting State v. Petrovich, 396 So. 2d 1318, 1322 (La. 1981)). But it "does not create a cause of action against a private individual or company." Hornsby v. Enter. Transp. Co., 987 F. Supp. 512, 516 (M.D. La. 1997); see Baynard v. Guardian Life Ins. Co. of Am., 399 So. 2d 1200, 1202 (La. Ct. App. 1981). Similarly, courts have held that this section does not give rise to a claim challenging allegedly discriminatory action by state officials. Washington v. Louisiana, No. CIV.A. 11-00334-BAJ, 2013 WL 5460331, at *8 (M.D. La. Sept. 30, 2013); Dupree v. Belton, No. CIV.A. 10-1592, 2013 WL 701068, at *9 (W.D. La. Feb. 26, 2013).

Sheriff Hutson and Ms. Morales argue that Ms. Weadd cannot state a claim under Article I, Section 3 of the Louisiana Constitution because she has not identified any law that she is challenging, but instead alleges that she was treated differently. Ms. Weadd does not dispute this argument in her opposition. Nor does she point to any precedent supporting a claim for discrimination in employment under Article I, Section 3. The Court has found none. Accordingly, because Ms. Weadd challenges individual action and not a state law, the Court finds that Ms. Weadd has failed to state a claim under Article I, Section 3 of the Louisiana Constitution.

Conclusion

For the foregoing reasons, the Motions to Dismiss filed by Sheriff Hutson and Ms. Morales

(Rec. Docs. 11, 34) are GRANTED; all claims against them are DENIED with prejudice.[9]

New Orleans, Louisiana, this 8th day of November, 2023.

_Janis van Meerveld_
Janis van Meerveld
United States Magistrate Judge

---

[9] Defendant Pearlina Thomas did not file a motion to dismiss, and all claims against her remain pending at this time.